UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHEXTRAS, INC., <br><br> Defendant. | CIVIL ACTION NO. _____ <br><br> VERIFIED COMPLAINT |

Plaintiff American Express Travel Related Services Company, Inc. ("AXP"), by and for its Verified Complaint against defendant HealthExtras, Inc. ("HealthExtras"), alleges as follows:

### Nature of the Action

1. AXP brings this action to compel HealthExtras to provide information and documents. HealthExtras administers an AXP-branded accidental disability plan that is offered exclusively to AXP cardholders and customers. As a result, HealthExtras maintains exclusive control and possession of critical information regarding enrollees of the plan.

2. Effective January 1, 2008, an affiliate of AXP will take over the function currently performed by HealthExtras. To permit that transition, AXP has demanded certain information related to plan enrollees. That information is and at all times has been the exclusive property of AXP. HealthExtras has failed to provide the demanded information, and instead seeks to use its control of the information to leverage from AXP

unwarranted compensation based on meritless contentions. AXP brings this action to compel HealthExtras to provide the demanded information.

### The Parties, Jurisdiction and Venue

3. AXP is a corporation organized and existing under the laws of the State of New York and has its principal place of business in New York, New York.

4. HealthExtras is a company organized and existing under the laws of the State of Delaware, and has its principal place of business in Rockville, Maryland.

5. The matter in controversy exceeds $75,000, exclusive of interest and costs.

6. This court has jurisdiction pursuant to 28 U.S.C. §1332 because AXP and HealthExtras are incorporated in, and have their principal places of business in, different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this district in accordance with 29 U.S.C. §1391 because a substantial part of the events giving rise to the claims occurred in this district.

### The Marketing Agreement

8. AXP entered into a Marketing Agreement with HealthExtras, effective September 17, 1999 (as amended and supplemented, "Marketing Agreement").

9. The initial term of the Marketing Agreement extended until September 16, 2001. The Marketing Agreement further provided that it would automatically renew for successive one year renewal terms, unless AXP terminated by written notice at least 60 days prior to the expiration of any renewal term.

10. Per the Marketing Agreement, HealthExtras provided administrative and marketing services for disability and travel-related insurance marketed under the name

"American Express Accidental Disability Plan" (the "Plan"). The Plan was offered exclusively to AXP cardmembers or other customers of AXP ("Customers").

11. The Plan included a permanent total disability component, which was underwritten by various insurance companies over time.

12. Currently, there are approximately 150,000 Customers enrolled in the Plan ("Enrollees").

13. Per the Marketing Agreement, HealthExtras maintained all administrative files and performed all administrative functions related to the Plan, including the following:

    a) responding to inquiries, complaints, and enrollment submissions by Customers;

    b) setting up and maintaining electronic files related to Enrollees; and

    c) preparing and providing reports to AXP regarding Enrollees, revenue, customer service, attrition and claims.

14. In connection with performing services under the Marketing Agreement, HealthExtras gained access to information regarding AXP Customers, including the Customers' identity, address, account numbers, and related information. HealthExtras also obtained information regarding the AXP Plan Enrollees, including, among other items, the name, address, and phone numbers of primary enrollees in the Plan, names, dates of birth, and beneficiary information for all persons covered under the Plan, coverage history, along with information related to policy issue and payment history and

other Plan-related information (collectively, "AXP Information"). Per the Marketing Agreement, the AXP Information was at all times the property of AXP.

15. The Marketing Agreement provides that "AMEX shall have all rights and interests in the list of Enrollees and the information contained thereon" [§ 4(c)]; that "[t]he Files [containing AXP Customer information] will remain at all times the sole property of AMEX" [§ 4(e)(4)(i)]; and that "[a]ll data and information submitted to HEALTHEXTRAS by AMEX in connection with the Services (the "AMEX Data") is and shall remain the property of AMEX. . . . The database of Enrolled Customers shall remain the sole property of AMEX" [Ex. G § 2].

### AXP's Notice of Termination of the Marketing Agreement

16. In early 2006, AXP notified HealthExtras of its intention to elect to terminate the Marketing Agreement effective September 16, 2006, at the end of the then current renewal term.

17. In response, HealthExtras contended that it maintained the right to continue to service Enrollees for a period of two years following the termination date based on Section 18(b) of the Marketing Agreement, which addressed "Early Termination." AXP rejected HealthExtras' contention, as the Marketing Agreement was not being terminated early, but simply was not going to be automatically renewed further, and HealthExtras' position was not supported by the Marketing Agreement. Thus, AXP contended that HealthExtras had no right to perform servicing relating to the Plan (and receive related fees) beyond the termination date.

18. The parties also had disputes regarding responsibilities relating to certain pending lawsuits, and AXP had informed HealthExtras of its intention to migrate the

insurance underwriting for the Plan from National Union Fire Insurance Company to Amex Assurance Company ("Amex Assurance").

### The Letter Agreement

19. To address and resolve the outstanding issues, AXP, Amex Assurance, and HealthExtras entered into a letter agreement dated June 23, 2006 (the "Letter Agreement").

20. While the Letter Agreement addressed the underwriting migration and indemnification obligations regarding the pending lawsuits, the primary purpose of the Letter Agreement was to resolve the period in which HealthExtras would continue to service the Plan and receive resulting fees. Thus, the Letter Agreement provides that HealthExtras would provide servicing and receive certain agreed upon fees through 2007. By its terms, the Letter Agreement terminates on December 31, 2007.

21. Thus, through the Letter Agreement, the parties resolved the dispute regarding the performance of the servicing function, and the right to receive related fees, by providing HealthExtras with one additional year of servicing (and related fees) through the end of 2007.

22. As the relationship between the parties was to terminate at the end of 2007, the Letter Agreement also addressed Transfer Assistance (as defined in the Marketing Agreement), which required HealthExtras to provide AXP with assistance, upon AXP's request. Under the Transfer Assistance provision, AXP could demand that HealthExtras "deliver to AMEX any remaining AMEX-owned reports and documentation still in HEALTHEXTRAS' possession."

23. Thus, the parties recognized that at the end of 2007, the relationship between the parties would end (unless AXP chose to extend the Letter Agreement for another year), and AXP and Amex Assurance would assume all responsibilities relating to the Enrollees beginning on January 1, 2008, and going forward.

### HealthExtras' Refusal to Return AXP's Property

24. After the Letter Agreement was entered into, several issues between the parties arose. Despite numerous contacts, it was not until HealthExtras forwarded a purported draft "Transition Services Agreement" on June 21, 2007, that HealthExtras gave any indication that it contended that it was entitled to continue to perform servicing, and receive related fees, beyond 2007.

25. Per a letter dated July 6, 2007, AXP rejected HealthExtras' contention and demanded the immediate return of certain documentation and information that is the property of AXP ("Demanded AXP Information").

26. In a letter dated July 20, 2007, HealthExtras continued to press its meritless contention regarding additional servicing and resulting fees.

27. Despite due demand having been made, HealthExtras to date has refused to return to AXP its property.

28. Without this information, AXP is unable to effect a proper transfer of the servicing function relating to the Plan from HealthExtras to Amex Assurance.

29. HealthExtras thus is improperly attempting to extract unwarranted additional compensation from AXP by trying to leverage the fact that it controls the information and data required to perform properly the servicing function. While HealthExtras admits that AXP is entitled to have a different party handle the servicing,

and the documents and information properly should be provided to AXP, it refuses to provide the Demanded AXP Information until its meritless claims for further servicing compensation are fully resolved to HealthExtras' satisfaction.

## FIRST CAUSE OF ACTION
### (Replevin)

30.  AXP hereby realleges and incorporates the prior paragraphs above as if set forth fully herein.

31.  AXP owns the Demanded AXP Information.

32.  AXP has demanded that HealthExtras provide to AXP the Demanded AXP Information.

33.  HealthExtras has failed, refused, and neglected to provide the Demanded AXP Information to AXP.

34.  AXP's rights to the Demanded AXP Information are superior to the rights of HealthExtras, and AXP is entitled to immediate possession.

35.  By virtue of the foregoing acts, conduct, and omissions of HealthExtras, AXP is entitled to take immediate possession of the Demanded AXP Information.

WHEREFORE, AXP demands judgment against HealthExtras granting it immediate possession of the Demanded AXP Information, issuance of a Writ of Replevin, and such other and further relief as the Court may deem as just and reasonable.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

36.  AXP hereby realleges and incorporates prior paragraphs above as if set forth fully herein.

37. Pursuant to 28 U.S.C. §2201, this Court may "declare the rights and other legal relations of any interested party" seeking a declaratory judgment.

38. There is a real, immediate, actual, and substantial controversy between AXP and HealthExtras, who have adverse legal interests. AXP owns and is entitled to immediate possession of the Demanded AXP Information. HealthExtras has refused, and continues to refuse, to provide it. Without the Demanded AXP Information, AXP will be unable to transfer properly and effectively the servicing function regarding the Plan to Amex Assurance.

39. This action will settle any disputed legal rights and the relationship of the parties with respect to the Demanded AXP Information and will afford relief from the uncertainty and controversy as described herein.

WHEREFORE, AXP respectfully requests that this Court enter a declaratory judgment, determining the following:

(a)   that AXP is entitled to an immediate right to possession of the AXP Demanded Information; and

(b)   that HealthExtras must immediately provide AXP with the Demanded AXP Information; and

(c)   pursuant to 28 U.S.C. § 2202, any further relief that the Court deems just.

Respectfully submitted,

_____
Louis Smith (LS 8851)
Laura A. Dwyer (LD 5111)
GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)

Attorneys for Plaintiff American Express
Travel Related Services Company, Inc.

Dated:  August 2, 2007

## **VERIFICATION**

JULIE E. CAMPLING states as follows:

1.     I am a Director with the Purchasing Services Group of plaintiff American Express Travel Related Services Company, Inc.

2.     I have reviewed the Verified Complaint in this matter, and I declare under penalty of perjury that the factual statements contained therein are, to the best of my knowledge, information, and belief, true and accurate. Executed on August 1, 2007.

_____
JULIE E. CAMPLING