this Section 11. Upon termination or expiration of this Agreement and at the request and option of AMEX or HEALTHEXTRAS as the case may be, each of AMEX and HEALTHEXTRAS agrees promptly (i) to return the Confidential Information of the other party to such party or (ii) destroy the Confidential Information of the other party and acknowledge in a sworn affidavit that all such Confidential Information has been destroyed.

(g) This Section 11, in its entirety, shall survive the termination of this Agreement.

12. **DATA AND RECORDS**: Acknowledging the confidentiality of Customer data, HEALTHEXTRAS hereby agrees to the terms of the AMEX Data Access Document attached hereto as Exhibit E, the Confidentiality/Data Security schedule attached hereto as Exhibit F and the Customer Data and Data Related Rights schedule attached hereto as Exhibit G the terms of which are hereby incorporated herein and made a part hereof. HEALTHEXTRAS will limit the information it obtains from Customers to information required by HEALTHEXTRAS to fulfill the Accidental Disability Plan, but in any event only such information as approved by AMEX. In addition, HEALTHEXTRAS will comply with the exhibits entitled Security as attached hereto as Exhibit H and AMEX Audit Rights attached hereto as Exhibit I, the terms of both are incorporated herein by reference and made a part hereof. In the event HEALTHEXTRAS uses the services of third party vendors, representatives or subcontractors, HEALTHEXTRAS shall be responsible for ensuring their compliance with the terms of this Agreement, and shall ensure that all such vendors, representatives or subcontractors execute the Non-Disclosure Agreement attached hereto as Exhibit J. With respect to access of AMEX data via a computer, HEALTHEXTRAS' employees and agents will follow the Terminal Rules set forth in Exhibit K.

13. **REPRESENTATIONS, WARRANTIES and COVENANTS:**

   (a) HEALTHEXTRAS represents and warrants that it has full power and authority to execute this Agreement and to take all actions required by, and to perform the agreements contained in, this Agreement, and that HEALTHEXTRAS' obligations under this Agreement do not conflict with its obligations under any other agreement to which HEALTHEXTRAS is a party.

   (b) HEALTHEXTRAS represents, warrants and covenants that the performance of its obligations under this Agreement in connection with the Accidental Disability Plan complies and will comply with all applicable federal, state, local and foreign laws and regulations, including but not limited to fair trade and advertising laws and regulations. HEALTHEXTRAS covenants to inform AMEX immediately of any changes in such laws or regulations of which it shall have knowledge and which may require a change in the Accidental Disability Plan.

   (c) HEALTHEXTRAS represents, warrants and covenants that each of its employees assigned to perform services with respect to the Accidental Disability Plan has and will have the skill and background to perform such assigned services in a competent and professional manner, and to act in compliance with all applicable laws and regulations.

   (d) HEALTHEXTRAS represents, warrants and covenants that it is and shall continue to be during the terms of this Agreement a party in good standing to a card acceptance agreement with AMEX ("Acceptance Agreement") for the acceptance of the American Express Cards.

(a)    #143704 v04, page 10 of 45

(e) AMEX represents and warrants that it has full power and authority to execute this Agreement and to take all actions required by, and to perform the agreements contained in, this Agreement, and that AMEX' obligations under this Agreement do not conflict with its obligations under any other agreement to which AMEX is a party.

(f) AMEX represents, warrants and covenants that the performance of its obligations under this Agreement in connection with the Accidental Disability Plan complies and will comply with all applicable federal, state, local and foreign laws and regulations, including but not limited to fair trade and advertising laws and regulations. AMEX covenants to inform HEALTHEXTRAS immediately of any changes in such laws or regulations of which it shall have knowledge and which may require a change in the Accidental Disability Plan.

14. **TRADEMARKS:** Notwithstanding any other provision of this Agreement to the contrary, neither party shall have the right to use the other party's registered or unregistered trademarks, service marks, or trade names (collectively, the "Marks"), or to refer to the other party directly or indirectly, in connection with any product, promotion or publication without the prior written approval of that party. Each party acknowledges that any prior consent of use or reference may be revoked at any time with immediate effect.

15. **INTELLECTUAL PROPERTY OWNERSHIP:**

HEALTHEXTRAS acknowledges that AMEX shall have exclusive, unlimited ownership rights to all works performed under each Promotional Program and all materials, information and/or deliverables prepared hereunder or developed as a result of services performed hereunder, both as individual items and/or a combination of components and whether or not the Promotional Program is completed. All of the foregoing shall be deemed to be work made for hire and made in the course of services rendered and shall belong exclusively to AMEX, with AMEX having the sole right to obtain, hold and renew, in its own name and/or for its own benefit, patents, copyrights, registrations and/or other appropriate protection. HEALTHEXTRAS and its personnel shall give AMEX, and/or any AMEX designee, all reasonable assistance and execute all documents necessary to assist and/or enable AMEX to perfect, preserve, register and/or record its rights in any such work, materials, information and/or deliverable. HEALTHEXTRAS shall, immediately upon request of AMEX, or upon the termination, cancellation or expiration of each Promotional Program or this Agreement, turn over to AMEX all materials, information and deliverables prepared or developed as a result of this Agreement.

Nothing herein shall be construed to restrict, impair or deprive HEALTHEXTRAS of any of its rights or proprietary interest in technology or products that existed prior to or developed independently of the performance of services or provision of materials under this Agreement.

16. **INTELLECTUAL PROPERTY INFRINGEMENT:**

(a) HEALTHEXTRAS agrees to defend and/or handle at its own expense, any claim or action against AMEX or its affiliates (including without limitation, its parent, subsidiaries, officers and directors) for any actual or alleged infringement of any intellectual or industrial property right, including, without limitation, trademarks, service marks, patents, copyrights, misappropriation of trade secrets or any similar proprietary rights, based on any portion of the Accidental Disability Plan that has been supplied or provided by HEALTHEXTRAS.

HEALTHEXTRAS further agrees to indemnify and hold AMEX and its affiliates harmless from and against any and all liabilities, losses, costs, damages and expenses (including reasonable attorneys' fees) associated with any such claim or action. HEALTHEXTRAS shall have the sole right to conduct the defense of any such claim or action and all negotiations for its settlement or compromise, unless otherwise mutually agreed to in writing.

(b) If any portion of the Accidental Disability Plan that is supplied or provided by HEALTHEXTRAS becomes, or in HEALTHEXTRAS' opinion are likely to become, the subject of any claim or action as described in subsection (a) above, then, HEALTHEXTRAS, at its expense may either: (i) procure for AMEX the right to continue using same as contemplated hereunder; (ii) modify same to render same non-infringing (provided such modification does not adversely affect the use of the Accidental Disability Plan as contemplated hereunder); or (iii) to AMEX' satisfaction, replace same with equally suitable, functionally equivalent, compatible, non-infringing products, materials or services.

17. **NOTICES:** All notices, consents, requests, instructions, approvals, and other communications made, required or permitted hereunder (each herein, a "Notice") shall be given in writing and delivered to the receiving party to its respective address set forth below (i) by personal delivery to the individual identified below, (ii) by certified or registered mail (return receipt requested), or (iii) by a nationally recognized courier or, with permission from the recipient, by electronic facsimile transmission (with receipt). The effective date of such Notice shall be deemed to be the date upon which the addressee personally receives any such Notice. Any party hereto may change its address set forth below by written notice to the other party hereto in accordance with the terms of this Section:

(a) If to AMEX:

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.
American Express Tower
3 World Financial Center
New York, New York 10285
Attn: J. Whitney Stevens
Vice President
American Express Relationship Services
Facsimile Number (212) 619-7011

With a copy to:

AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.
General Counsel's Office
American Express Tower
3 World Financial Center
New York, New York 10285-4926
Attn: Counsel for AERS Insurance Products

Facsimile Number: (212) 640-4929

If to: HEALTHEXTRAS
Attn: David T. Blair
CEO
2275 Research Boulevard
Seventh Floor
Rockville, MD 20850

Facsimile Number:

18. **TERM AND TERMINATION:**

(a) This Agreement shall take effect upon the date hereof (the "Effective Date") and continue for an initial term of two (2) years, until September 16, 2001, unless earlier terminated in accordance with this Section. This Agreement will automatically renew for successive one year renewal terms unless AMEX, in its sole discretion, elects to terminate as of the end of the initial term or any renewal term by providing HEALTHEXTRAS with at least sixty (60) days written notice prior to the expiration of the initial term or prior to the expiration of any renewal term. Unless AMEX elects to terminate this Agreement, this Agreement shall automatically renew in accordance with the then current terms and conditions, unless HEALTHEXTRAS can provide evidence of cost increases. HEALTHEXTRAS agrees to give AMEX one-hundred and twenty (120) days notice of any cost increases.

(b) <u>Early Termination</u>: In accordance with the following, this Agreement may be terminated by either party prior to the expiration of the initial term or any renewal term upon written notice to the other party in accordance herewith:

(i) In the event AMEX in its sole discretion determines that the initial Promotional Program or any subsequent campaign is not successful AMEX will not extend the Agreement for the full initial term.

(ii) In the event AMEX terminates this Agreement with HEALTHEXTRAS and AMEX continues to offer an Accidental Disability Plan, AMEX and HEALTHEXTRAS agree that for a period of two (2) years immediately following the termination date, HEALTHEXTRAS will continue to service the Enrollees under the existing terms and conditions of this Agreement, as well as, pass through all fees to AMEX for AMEX' Enrollees acquired under this Agreement.

(iii) In the event that the other party commits a material breach or default under this Agreement which breach is not cured by the breaching party thirty (30) days from the receipt of notice to cure the breach from the non-breaching party, then the non-breaching party may terminate this Agreement in its discretion at any time after such thirty (30) day period.

(iii) In the event (1) of a sale or distribution of all or substantially all of the assets of HEALTHEXTRAS or a sale or distribution of sufficient stock (other than pursuant to a public offering) of HEALTHEXTRAS to effect a change in control; or (2) that HEALTHEXTRAS or its affiliate enters into the business of providing financial services or provides a financial product or service substantially similar to any of AMEX' financial products or services, AMEX may, in its sole discretion, terminate this Agreement

immediately. In the event that AMEX terminates this Agreement pursuant to the preceding sentence of this Section, HEALTHEXTRAS shall reimburse AMEX for reasonable out-of-pocket expenses incurred in transferring the Accidental Disability Plan (excluding overhead), at AMEX' election, to another vendor of AMEX or to AMEX itself. With AMEX' approval, which shall not be unreasonably withheld, HEALTHEXTRAS may negotiate transfer expenses on behalf of AMEX with another vendor to ensure the reasonableness of the expenses. With AMEX' approval, HEALTHEXTRAS may provide components of the transfer.

(iv) Either party may terminate this Agreement with immediate effect: (1) upon the institution by the other party of proceedings to be adjudicated a bankrupt or insolvent, or the consent by the other party to institution of bankruptcy or insolvency proceedings against it or the filing by the other party of a petition or answer or consent seeking reorganization or release under the Federal Bankruptcy Code, or any other applicable Federal or state law, or the consent by the other party to the filing of any such petition or the appointment of a receiver, liquidator, assignee, trustee, or other similar official of the other party or of any substantial part of its property, or the making by the other party of an assignment for the benefit of creditors, or the admission in writing by the other party of an assignment for the benefit of creditors, or the admission in writing by the other party of its inability to pay its debts generally as they become due or the taking of corporate action by the other party in furtherance of any such actions; (2) if, within 60 days after the commencement of an action against the other party seeking any bankruptcy, insolvency, reorganization, liquidation, dissolution or similar relief under any present or future law or regulation, such action shall not have been dismissed or all orders or proceedings thereunder affecting the operations or the business of the other party stayed, or if the stay of any such order or proceeding shall thereafter be set aside; or if, within 60 days after the appointment without the consent or acquiescence of the other party of any trustee, receiver or liquidator or similar official of the other party, or of all or any substantial part of the property of the other party, such appointment shall not have been vacated.

(v) HEALTHEXTRAS represents to AMEX that it has the legal right to use Christopher Reeve's likeness in marketing materials and will use Christopher Reeve's image for promotion of the AMEX Plan at AMEX' discretion. If HEALTHEXTRAS loses its legal right to use the Christopher Reeve's image, AMEX will have the right to cancel the contract without penalty. In the event this Agreement is terminated for any reason, AMEX may no longer use Christopher Reeve's likeness or endorsement in the promotion of the Plan.

(vi) <u>Transfer Assistance:</u> Upon the expiration or termination of this Agreement, HEALTHEXTRAS shall, upon AMEX' request, provide the following assistance: (i) continue to provide the Accidental Disability Plan to the extent requested by AMEX in accordance with the Performance Standards for the remainder of all Enrollees' enrollment period up to two (2) years from the effective termination date, provided that HEALTHEXTRAS has been paid for such enrollment period; (ii) provide such assistance ("Transfer Assistance") as reasonably requested by AMEX to transfer the Accidental Disability Plan to another vendor or to AMEX itself during a one-hundred eighty (180) day period after expiration of the Enrollees' remaining enrollment period

with HEALTHEXTRAS; (iii) answer Customers' questions regarding the Services as mutually agreed upon an as needed basis; and/or (iv) deliver to AMEX any remaining AMEX-owned reports and documentation still in HEALTHEXTRAS' possession, or at AMEX' direction, destroy all AMEX data and information in the HEALTHEXTRAS' possession. The above referenced Transfer Assistance shall be provided at AMEX' expense unless otherwise provided herein or unless the termination is due to a material breach by HEALTHEXTRAS, in which case HEALTHEXTRAS will pay for any costs arising out of the Transfer Assistance. HEALTHEXTRAS will take no actions to prevent or obstruct AMEX from utilizing the services of any of the Approved Vendors, either during or after the effective termination date of this Agreement.

19. **INSURANCE:**

    (a) During the term of this Agreement and for any period that the Accidental Disability Plan is made available to Customers (including without limitation Enrollees), HEALTHEXTRAS agrees to maintain, at its own expense, insurance in at least the following amounts (or such reasonable higher amounts upon which the parties may hereafter agree) to insure against both HEALTHEXTRAS and AMEX' risk of loss in connection with the services described in this Agreement: (i) commercial general liability insurance, including coverage for contractual liability, fire and casualty, business interruption, and complete operations, in the amount of $2million per occurrence with a $5 million umbrella; and (ii) errors and omissions liability insurance covering the acts, errors, omissions and infringement of HEALTHEXTRAS in the amount of at least $5 million per occurrence with an annual aggregate of $5 million.

    (b) HEALTHEXTRAS shall provide AMEX with certificates of insurance or adequate proof of the foregoing insurance to AMEX on the date hereof and within five (5) days of the issuance of a renewal certificate for each such insurance policy. The commercial general liability insurance policy shall name AMEX and its affiliate companies as additional insured(s) with respect to the Accidental Disability Plan. All insurance policies required hereunder shall contain a provision stating the name and address of AMEX and that AMEX is to be notified in writing by the insurer at least thirty (30) days prior to cancellation of, or a material change in, any policy issued by such insurer.

    (c) All policies required hereunder shall be reasonably maintained with insurers acceptable to AMEX. AMEX reserves the right to disallow coverage from any insurer that does not maintain a rating of A or higher from A.M. Best's.

    (d) Reinsurance - - AMEX retains the right to demand that HEALTHEXTRAS makes its best effort to secure from the Insurer(s), an agreement binding on the Insurer(s) to cede a significant level of reinsurance to an affiliate designated by AMEX.

20. **MISCELLANEOUS:**

    (a) <u>Headings:</u> Headings stated in this Agreement are for convenience of reference only and are not intended as a summary of such sections and do not affect, limit, modify, or construe the contents thereof.

(a)    #143704 v04, page 15 of 45

(b) 21st Century. HEALTHEXTRAS shall (i) manage and manipulate data in connection with the Accidental Disability Plan involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; (ii) manage and manipulate data in connection with the Accidental Disability Plan involving all dates from the 20th and 21st centuries without inaccurate results related to such dates; (iii) have user interfaces and data fields in connection with the Accidental Disability Plan formatted to distinguish between dates from the 20th and 21st centuries; and (iv) represent all data in connection with the Accidental Disability Plan to include indications of the millennium, century, and decade as well as the actual year.

With respect to all software licensed by HEALTHEXTRAS and used in connection with the Accidental Disability Plan, HEALTHEXTRAS warrants that: (i) the software has been tested and is fully capable of providing accurate results using data having date ranges spanning the twentieth (20th) and twenty first (21st) centuries (i.e., years 1980-2100). Without limiting the generality of the foregoing, HEALTHEXTRAS warrants that all software licensed from and/or developed by HEALTHEXTRAS shall (A) manage and manipulate data involving all dates from the 20th and 21st centuries without functional or data abnormality related to such dates; (B) manage and manipulate data involving all dates from the 20th and 21st centuries without inaccurate results related to such dates; (C) have user interfaces and data fields formatted to distinguish between dates from the 20th and 21st centuries; and (D) represent all data related to include indications of the millennium, century, and decade as well as the actual year.

(c) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall constitute an original, but all of which together shall constitute one instrument notwithstanding that all parties are not signatories to the same counterparts.

(d) Audit Rights: Upon the reasonable request from either party, such requesting party shall be given reasonable access to audit and access to verification documentation as the requesting party reasonably requests to assure the other party's compliance with the terms of this Agreement including but not limited to data security. Such requests shall be limited to the scope of this Agreement and shall not be made more frequently than once in any three-month period. Notwithstanding the foregoing, if AMEX has reasonable grounds to believe a breach of data security has occurred, AMEX reserves the right to visit and audit HEALTHEXTRAS premises with less than 24 hours notice, during normal business hours.

(e) Alternative Dispute Resolution

   (i) Negotiation. The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement (other than disputes regarding material breaches) promptly by negotiations between executives who have authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of business. Within 20 days after delivery of said notice, executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they reasonably deem necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within 60 days of the disputing party's

notice, or if the parties fail to meet within 20 days, either party may initiate mediation of the controversy or claim as provided hereinafter.

(ii) If a negotiator intends to be accompanied at a meeting by an attorney, the other negotiator shall be given advance notice of such intention and may also be accompanied by an attorney. All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of the Federal Rules of Evidence and state rules of evidence.

(iii) <u>Mediation.</u> If the above referenced dispute has not been resolved by negotiation as provided above, the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes. One neutral third party will be selected from the CPR Panels of Neutrals to mediate the dispute. If the parties encounter difficulty in agreeing on a neutral, they will seek the assistance of CPR in the selection process.

(iv) <u>Other Remedies.</u> In the event of a dispute arising out of or relating to this contract or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided in subsection (i) and (ii) above within sixty (60) days of the initiation of such procedure, either party may seek any remedy available at law or equity, including recourse to the courts.

(f) <u>New York Law:</u> This Agreement shall be governed by and in accordance with the laws of the State of New York, without reference to its conflict of laws principles.

(g) <u>Independent Contractor Status and Authority.</u>

(i) HEALTHEXTRAS agrees and acknowledges that in its performance of its obligations under this Agreement, HEALTHEXTRAS is an independent contractor of AMEX. HEALTHEXTRAS is solely responsible for its own activities. HEALTHEXTRAS has no authority to make commitments or enter into contracts on behalf of, bind or otherwise obligate AMEX in any manner whatsoever except as expressly stated in this Agreement.

(ii) Since HEALTHEXTRAS is an independent contractor and not an agent of AMEX, HEALTHEXTRAS represents, warrants and agrees that it shall be liable for all taxes, withholdings, and imposts of any nature applicable to the payment of compensation, whether current or deferred, for the work performed on HEALTHEXTRAS' behalf in accordance with HEALTHEXTRAS obligations hereunder. Furthermore, HEALTHEXTRAS will indemnify and hold AMEX harmless for any such taxes (applicable to the payment of compensation to HEALTHEXTRAS' employees, agents, or representatives), withholding or imposts for which AMEX may be determined to be liable.

(h) <u>Non-Waiver; Cumulative Rights:</u> No failure or delay (in whole or in part) on the part of any party to exercise any right or remedy hereunder shall or operate as a waiver thereof or effect any other right or remedy. All rights and remedies hereunder are cumulative and are not exclusive of any other rights or remedies provided hereunder or by law.

(i) <u>Severability:</u> If any provision contained in this Agreement is or becomes invalid, illegal, or unenforceable in whole or in part, such invalidity, illegality, or unenforceability shall not affect the remaining provisions and portions of this Agreement.

(j) <u>Assignment:</u> This Agreement may not be assigned by either party without the prior written consent of the other party except that AMEX may assign this Agreement to its parent, a subsidiary or an affiliate without HEALTHEXTRAS' prior written consent. HEALTHEXTRAS may assigns its rights to a subsidiary or an affiliate only with AMEX' written consent,

(k) <u>Entire Agreement:</u> This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior contemporaneous oral or written understandings or agreements among the parties which relate to the subject matter hereof. No modification or amendment of this Agreement or any of its provisions shall be binding upon any party unless made in writing and duly executed by authorized representatives of all parties.

IN WITNESS WHEREOF, AMEX and HEALTHEXTRAS, intending to be legally bound by the terms of this Agreement, have caused this Agreement to be executed by their duly authorized representatives as of the date and year first above written.

AMERICAN EXPRESS TRAVEL
RELATED SERVICES COMPANY, INC.

By: _____
Name: J. Whitney Stevens
Title: Vice President
American Express Relationship Services


HEALTHEXTRAS, LLC

By: _____
Name: David T. Blair
Title: CEO