UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> HEALTHEXTRAS, INC., <br><br> Defendant. | CIVIL ACTION NO. 07CV6986 (NRB) |

**MEMORANDUM OF LAW IN REPLY TO OPPOSITION
TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION,
OR IN THE ALTERNATIVE, A WRIT OF REPLEVIN**

GREENBERG TRAURIG, LLP
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200
(212) 801-6400 (fax)
Louis Smith (LS 8851)
Laura A. Dwyer (LD 5111)

Attorneys for American Express Travel
Related Services Company, Inc.

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

    I.    THE ALTERNATIVE DISPUTE RESOLUTION PROVISION IN THE MARKETING AGREEMENT DOES NOT PREVENT THIS COURT FROM GRANTING AMERICAN EXPRESS'S MOTION ............................................................ 2

    II.    AMERICAN EXPRESS HAS SATISFIED ITS BURDEN TO OBTAIN A PRELIMINARY INJUNCTION .............................................................................. 4

        A.    American Express has Demonstrated Irreparable Harm ............................................. 5

        B.    American Express has Demonstrated a Clear Likelihood of Success on the Merits .. 6

    III.    AMERICAN EXPRESS IS ENTITLED TO A WRIT OF REPLEVIN ........................ 9

## **PRELIMINARY STATEMENT**

HealthExtras' opposition papers reflect its long-held strategy of delay and obfuscation intended to prolong improperly its relationship with American Express in order to extract compensation to which it is not entitled. HealthExtras does not and cannot challenge that the information and documents sought are the property of American Express, to which American Express has all rights and interests, and thus this Court should grant American Express's motion.

HealthExtras makes numerous contentions about the contractual rights of the parties which are flatly contradicted by documentary evidence and the terms of the agreements themselves. While HealthExtras now claims that the relationship should continue into 2008, on July 21, 2006, shortly after the Letter Agreement was executed, HealthExtras' in-house counsel -- who had been directly involved in negotiating and drafting the Letter Agreement -- wrote to American Express and stated:

> More to the point, why do we need to go through the exercise of negotiating the new MSA when AMEX has clearly told us that it intends to terminate the relationship on December 31, 2007. * * * I would be happy to have you tell me you want a new agreement to take effect when the current one expires.

Moreover, while HealthExtras now contends that the Letter Agreement did not address compensation rights past 2007, the Letter Agreement states:

> Except as set forth above or otherwise specified in this Letter, the Parties agree there are no additional payments or monies (including the $40 marketing fee under Exhibit C) owed by either Party to the other under the terms of the Marketing Agreement.

In the end, however, while HealthExtras' contractual contentions are completely meritless, the Court need not resolve them to grant American Express's motion. The information and documents at issue are the property of American Express and HealthExtras has no legitimate basis to refuse to turn them over.

## ARGUMENT

### I. THE ALTERNATIVE DISPUTE RESOLUTION PROVISION IN THE MARKETING AGREEMENT DOES NOT PREVENT THIS COURT FROM GRANTING AMERICAN EXPRESS'S MOTION

Although it only devoted two sentences to its argument and cited no reported cases, HealthExtras seeks denial of American Express's motion based on the ADR provision in the Marketing Agreement. This meritless delay tactic should be rejected for numerous reasons.

First, American Express's replevin claim is based on HealthExtras' refusal to provide information and documents that are the property of American Express. While provisions in the Marketing Agreement confirm that the property at issue belongs to American Express, its property interests exist independent of that agreement.

Second, as another United States District Court has already ruled, the ADR provision in the Marketing Agreement is not a condition precedent to bringing suit. The Marketing Agreement is governed by New York law, Section 20(f), and Judge Lindsay correctly interpreted the agreement and applied New York law in reaching his conclusion that the ADR provision is not a "condition precedent to bringing suit against HealthExtras." Declaration of Louis Smith in Reply ("Smith Dec.") ¶¶ 1-5, Exs. A & B. HealthExtras never even mentions this prior ruling.

Third, regardless of whether it was correct, as a result of Judge Lindsay's ruling, HealthExtras is collaterally estopped from arguing that the ADR provision is a condition precedent to filing suit. *See, e.g., NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir. 1999) (reasoning that collateral estoppel bars a party from relitigating an issue if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."). The issue was fully briefed before Judge Lindsay, and the ruling is now final as there are no

2

pending or appealable claims between American Express and HealthExtras in that Massachusetts litigation. Smith Dec. ¶¶ 1-5, Exs. A & B

Fourth, even if the ADR provision were found to apply and be a condition precedent, dismissal still would not be warranted because the provision has been satisfied. Section 20(e)(i) provides that the parties may request a meeting of executives to address a dispute, and "if the parties fail to meet within 20 days, either party may initiate mediation." Declaration of Julie E. Campling in Support dated August 1, 2007 ("8/1 Campling Dec.") at Ex. A. HealthExtras never initiated mediation. Smith Dec. ¶¶ 6-9. Section 20(e)(iv) states as follows:

> In the event of a dispute arising out or relating to this contract or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided in subsection (i) and (ii) above within sixty (60) days of the initiation of such procedure, either party may seek any remedy available at law or equity, including recourse to the courts.

HealthExtras concedes that "[b]eginning in February, 2007, AXP began requesting information" relating to the Plan at issue herein (Blair Aff. ¶11 and Smith Dec. ¶6, Ex. C), and in response per a letter dated May 29, 2007, HealthExtras sought an executive meeting pursuant to Section 20(e)(i) of the Marketing Agreement. Smith Dec. ¶ 7 & Ex. D. American Express filed this action on August 3, 2007, sixty-six (66) days after HealthExtras initiated the ADR procedures (on May 29, 2007), and after the sixty-day window in Section 20(e)(iv). Alternatively, HealthExtras waived any rights regarding ADR when it failed to raise the issue in response to American Express's position that the ADR clause is inapplicable and because it never initiated mediation. Smith Dec. ¶¶ 8-9, Exs. E & F.

Finally, even if this Court were to find the ADR provision to be a condition precedent that has not been satisfied, this Court still can enter a preliminary injunction for American Express. *See Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co.*, 749 F.2d 124, 125 (2d Cir. 1984) (holding that even where dispute must be resolved by binding arbitration,

3

District Court still maintains the authority and "obligation to consider the merits of a requested preliminary injunction").

## II. AMERICAN EXPRESS HAS SATISFIED ITS BURDEN TO OBTAIN A PRELIMINARY INJUNCTION

Regardless of whether it is viewed as seeking a mandatory injunction, the undisputed facts and controlling principles of law demonstrate that American Express is entitled to a preliminary injunction. Moreover, HealthExtras' contention that American Express's papers do not allow for crafting an injunction with the specificity required by Rule 65(d) is meritless. HealthExtras' Memorandum of Law in Opposition ("HE Memo") at 13. The specific information and documentation sought is set forth at paragraph 2 of the Declaration of Micki Koehler dated July 30, 2007. The information and documents were previously demanded in a July 6, 2007, letter, Koehler Dec., Ex. B, and HealthExtras never requested any clarification. Beyond that, in its letter application to this Court dated August 8, 2007, seeking to delay these proceedings, HealthExtras stated that "there is no basis for concluding that, if the Court ordered the relief American Express seeks in early September, that American Express' deadline of October 1, 2007 could not be met." Smith Dec., ¶ 10 & Ex. G. In light of that representation, HealthExtras cannot now be heard to complain that the demand for information lacks specificity.

Also meritless is HealthExtras' contention that American Express is seeking "HEI's proprietary information system." HE Memo at 9. The requested information is just data. Moreover, the fact that HealthExtras recognizes that it already provides certain data and reports to American Express further undermines any contention that the information sought herein is proprietary or should be withheld from American Express.

### A.   American Express has Demonstrated Irreparable Harm

HealthExtras incorrectly contends that irreparable harm has not been demonstrated because the harm that would ensue if HealthExtras is permitted to continue to wrongfully withhold American Express's property would be "self-inflicted." The product at issue is branded "American Express." It is offered only to American Express cardmembers and customers. The benefit they receive is called the "Unique AMEX Benefit." As a result, American Express's name, reputation, and good-will are squarely implicated. As these proceedings make abundantly clear, American Express does not want HealthExtras involved any further effective January 1, 2008. By trying to force its continuing involvement, HealthExtras jeopardizes the name, reputation, and good-will of American Express, and leaves the name, reputation, and good-will within the control of a third party without the consent of (indeed, in the face of opposition by) American Express. Moreover, HealthExtras' continued involvement would completely frustrate and eviscerate the principal purpose for entering into the Letter Agreement (i.e., conclusively establishing the date by which the relationship between the parties would end). This cannot be compensated with money damages.

HealthExtras' own papers further demonstrate the imminent irreparable harm American Express faces if its motion is denied. In the section of its memorandum titled "The Nature of the Present Dispute," HealthExtras states as follows:

> Moreover, the underwriting agreement between HEI and Amex Assurance Company expires by its own terms on December 31, 2007, and Amex Assurance Company will have no further role in connection with the HEI Program absent a new agreement between HEI and Amex Assurance Company.

HE Memo at 10. If HealthExtras' involvement ceases at year end as the parties agreed and intended, then there is no issue. However, by the above statement, HealthExtras has indicated that if it is still involved into 2008, the current underwriter of the Plan has in HealthExtras' view

5

no role to play unless it signs some agreement that is acceptable to HealthExtras. This demonstrates the confusion and mischief that HealthExtras will seek to create if it continues on past the December 31, 2007, deadline.

Remarkably, HealthExtras contends that this litigation is premature because of the ADR provision, and then at the same time argues that American Express has "woefully delayed" in bringing this action. HE Memo at 17. On June 21, 2007, despite the parties' agreement and its previously expressed understanding, HealthExtras for the first time contended that it was entitled to perform servicing and receive related fees into 2008. Koehler Dec. ¶ 7, Ex. B; Smith Dec., Ex. F. This is not refuted or challenged. In response, on July 6, 2007, American Express promptly demanded the return of its information. Koehler Dec., Ex. B. HealthExtras announced its refusal on July 20, 2007. *Id.*, Ex. C. This action was filed on August 3, 2007. There has been no delay.

### B. American Express has Demonstrated a Clear Likelihood of Success on the Merits

HealthExtras essentially argues that American Express is unlikely to prevail on the merits because the "Letter Agreement did not terminate the underlying Marketing Agreement, but rather specifically contemplated that a more Definitive Agreement would be needed to supersede the Marketing Agreement," and American Express "refused to discuss the terms of a more Definitive Agreement." Blair Aff. at 8, 10. HealthExtras further contends that the Letter Agreement "did not change the parties' revenue sharing formula beyond December 31, 2007." *Id.* at 8. As will be explained further herein, the Court need not resolve the issues to grant American Express's motion as they do not relate to the core property right that American Express is now seeking to enforce. Nevertheless, as HealthExtras has made these contentions the focal points of its response, we will quickly demonstrate how totally baseless they are.

6

The Letter Agreement did contemplate the parties negotiating a further definitive agreement. *See* 8/1 Campling Ex. C, Part Two (B); Declaration of Julie E. Campling in Reply ("8/17 Campling Dec.") ¶¶ 2-3. As a result, on June 30, 2006, American Express forwarded a draft Master Services Agreement ("MSA") to HealthExtras. 8/17 Campling Dec. ¶ 4. After several follow-ups, HealthExtras' in-house counsel Mr. Mott, who unlike Mr. Blair, who submitted an affidavit herein, actually attended the critical June 9, 2006, meeting, finally responded as follows:

> More to the point, why do we need to go through the exercise of negotiating the new MSA when AMEX has clearly told us that it intends to terminate the relationship on December 31, 2007. I'm not certain why you and the other Amex team members are concerned. I was under the impression that everything was operating smoothly since the time we executed the Letter Agreement.
>
> If I'm mistaken, and you are looking to enter into a long-term relationship beginning January 1, 2008, then the MSA and schedule would make sense. And, I would certainly work diligently with you to finalize such an agreement. I would be happy to have you tell me you want a new agreement to take effect when the current one expires.

8/17 Campling Dec. ¶ 5. As a result of that response, American Express agreed to dispense with further efforts to put in place a new MSA. *Id.* ¶ 6. This irrefutably demonstrates that HealthExtras' contentions surrounding American Express's refusal to discuss a Definitive Agreement are false. It also shows that HealthExtras knew and understood immediately after the signing of the Letter Agreement that the parties' relationship would end at the end of 2007, and its efforts to suggest a different understanding in this lawsuit are meritless.

In addition, while HealthExtras contends that the Letter Agreement did not change revenue sharing beyond 2007, the plain language of the agreement at the end of Section 2 (Servicing Fees) is precisely to the contrary:

> Except as set forth above or otherwise specified in this Letter, the Parties agree there are no additional payments or monies (including the $40 marketing fee

under Exhibit C) owed by either Party to the other under the terms of the Marketing Agreement.

8/1 Campling Dec., Ex. C. Section 2 thus explicitly states that the parties' financial obligations to one another under the Marketing Agreement are subsumed by the financial obligations under the Letter Agreement, and the Letter Agreement provides only that American Express will pay servicing fees through the end of 2007.

While HealthExtras argues that the Marketing Agreement was never terminated, as the above-cited clause in Section 2 of the Letter Agreement makes clear, HealthExtras at the very least cannot dispute that the Marketing Agreement was superseded in certain areas by the Letter Agreement. Another such area is the term of the relationship among the parties, which the Letter Agreement makes clear expires at the end of 2007. 8/1 Campling Dec., Ex. C., Sec. 11. Indeed, the primary purpose of entering into the Letter Agreement was to resolve the dispute over when the parties' relationship would end. HealthExtras contended that it was entitled to two additional years of servicing under Section 18(b)(ii) of the Marketing Agreement to September 16, 2008 (*see* 8/17 Campling Dec., Ex. A); American Express responded that it would end effective September 16, 2006 (*see* 8/1 Campling Dec., Ex. B); and the parties reached a compromise via the Letter Agreement that HealthExtras would continue servicing through the end of 2007 at adjusted fees. By contending that it has additional rights under the Marketing Agreement into 2008, HealthExtras is trying to walk away from the agreement the parties plainly reached. Moreover, it is raising again issues that existed before the Letter Agreement was entered into and were resolved by the Letter Agreement.

Finally, even if American Express were required to send a termination notice under the Marketing Agreement as HealthExtras' contends (which American Express denies), then such notice need not be sent until November 2, 2007 (sixty days before year end), as the current

"renewal term" would expire on December 31, 2007, because the September 16 date in Section 18(a) of the Marketing Agreement was superceded by the year-end arrangement in the Letter Agreement.

### III. AMERICAN EXPRESS IS ENTITLED TO A WRIT OF REPLEVIN

Despite the length of its memorandum, HealthExtras spends little time addressing American Express's interest in the data and information that is the subject of this action. HealthExtras argues that there is a distinction between "Customer cardmember base (which is owned by AXP) and members of the HEI Program who are defined as Enrollees (which are owned by HEI)." HE Memo at 9. Contrary to that contention, the Marketing Agreement states that "AMEX shall have all rights and interests to the list of Enrollees and the information contained thereon." 8/1 Campling Dec., Ex. A at Section 4(c). HealthExtras never addresses that provision.

HealthExtras' effort to distinguish ownership (which it concedes American Express has for some items, although it does not bother to indicate which it believes are owned and which are not) from the right to possession gets it nowhere. As set forth above, the Marketing Agreement provides that American Express "shall have <u>all rights and interests</u> to the list of Enrollees and the information contained thereon." *Id.*, Ex. A at Section 4(c) (emphasis added). It cannot seriously be disputed that "all rights and interests" includes the right to possess the materials if American Express so chooses. For the same reason, HealthExtras' argument about the need for an "exclusive" right to possession fails. Again, "<u>all</u> rights and interests" must include the "exclusive" right to possession if American Express so determines that that is how it wishes to proceed. While in this case American Express is prepared to allow HealthExtras to have access to the information to the extent it is needed to continue servicing through the end of the year, that

9

does not alter the fact that American Express has "all rights and interests," which includes the exclusive right of possession, regarding the information.

As described in its moving papers, *EchoMail v. American Express Co.*, 445 F. Supp. 2d 87 (D. Mass. 2006), establishes the analytical framework for addressing this situation. HealthExtras did not even attempt to distinguish *EchoMail*. Like the vendor in *EchoMail*, HealthExtras contends that American Express is not entitled to immediate and exclusive possession of the materials because HealthExtras has raised certain contentions it believes must be resolved before the information should be provided to American Express. The court in *EchoMail* ordered the vendor to return to American Express its documents and information, but further allowed the vendor to pursue any claims for compensation that it contended it may have. *Id.* at 92. Similarly, this Court should order the return to American Express of its information, and then HealthExtras can pursue whatever claims it believes it has for compensation. While American Express has demonstrated that any such claims lack merit, the Court need not resolve that now and such claims should not be an impediment to ordering HealthExtras to return to American Express its property.

Respectfully submitted,

Louis Smith (LS-8851)<br>
Laura A. Dwyer (LD-5111)<br>
GREENBERG TRAURIG, LLP<br>
MetLife Building, 200 Park Avenue<br>
New York, New York 10166<br>
(212) 801-9200 (p)<br>
(212) 801-6400 (fax)<br>
Attorneys for Plaintiff American Express Travel Related Services, Inc.

Dated: August 20, 2007