MAY-18-2006 THU 11:01 AM AMERIPRISE FINANCIAL            FAX NO. 6126713767                    P. 05

American Express Company
May 16, 2006
Page 4 of 4

**CONFIDENTIAL COMMUNICATION**
**FOR SETTLEMENT PURPOSES ONLY**

uncouple or clearly distance the HealthExtras sponsored/Christopher Reeve endorsed Accidental Disability Plan from the offering of its new AMEX product then any communication AMEX sends to the current Enrollees will be confusing or misleading and thereby constitute false advertising under the Lanham Act. HealthExtras' position is that without a new agreement between the two sides, any communication to the Enrollees about switching the underwriter and sponsor (which at this point would probably be almost any sort of transition letter) would be: (i) a misleading statement; (ii) that is likely to deceive a substantial segment of the advertisement's audience (iii) on a subject material to the decision to purchase the goods or services. See, e.g., *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971-72 (7th Cir. 1999).

If a Lanham Act claim were to be filed, one of the first steps would be to conduct a survey of the current base of Enrollees to demonstrate what HealthExtras has communicated to AMEX previously – that a statistically significant portion of the current AMEX customers enrolled in the program did so based on the Christopher Reeve endorsement. See, e.g., *Johnson & Johnson-Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298 (2nd Cir. 1992); *Johnson & Johnson-Merck Consumer Pharm. Co. v. Rhone-Poulenc Rorer Pharm., Inc.*, 19 F.3d 125, 136 (3rd Cir. 1994).

In addition to the Lanham Act problems associated with HealthExtras and the Christopher Reeve endorsement, AMEX's plan to seamlessly migrate the existing customer base, rather than terminating the old program and starting from scratch, poses a deceptive trade or business practice problem under applicable consumer laws similar to the "slamming" practice by telecommunications carriers that is now illegal under federal law and regulations. See 47 U.S.C.A. §258(a).

The above is being presented to clarify HealthExtras' view of the merits of the respective legal positions, and to hopefully avoid prolonged debate on the legal claims at our next meeting. HealthExtras continues to believe that we need to negotiate any changes to the current agreement from the vantage of business partners as we have done in the past.

Thank you, and please feel free to contact me if you want to discuss the contents of this letter or any other legal issues in advance of our next meeting.

Yours sincerely,

*[signature]*

Joseph M. Mott
Deputy General Counsel


cc: David T. Blair, CEO
    Thomas M. Farah, General Counsel

# Exhibit B

Case 1:07-cv-06986-NRB   Document 18-2   Filed 10/10/2007   Page 2 of 6

"Joseph Mott" <jmott@catalystrx.com>

08/09/2006 11:02 AM

To: Julie E Campling/JAPA/TRS/AEXP@AMEX

cc: Aditi J Gokhale/AMER/TRS/AEXP@AMEX, Andrew E Roth/AMER/CORP/AEXP@AMEX, David I Amon/AMER/TRS/AEXP@AMEX, "Lisa D'souza" <ldsouza@catalystrx.com>, Mark L LoSacco/AMER/TRS/AEXP@AMEX

Subject: RE: New Master Services Agreement, Schedule and Carrier Agreement

Julie,

We are not trying to be uncooperative or difficult. Sometimes email, though convenient, has a tendency to distort the intent of the message. How about a conference call to discuss the issues?

We are willing to work with Amex on the subject of a new MSA, but we want to understand what it is we are trying to accomplish with the new agreement. My initial reaction to the MSA was that it was a standard vendor contract, with modifications, that does not accurately reflect the services or reporting that we currently provide and that it would need a lot of rework to conform it to the terms of the current agreement. Further- unless of course I've misread the draft MSA- Amex only intends for the MSA to cover the time period from September 1, 2006 through December 31, 2007. If the contract is intended to govern a relationship that requires different services and reporting after that time, then that would be an altogether different situation.

I really think a phone conference would be helpful in trying to understand what it is we want from a new MSA and where we

need the clarification you referenced.

I know Amex has also expressed a desire to modify the parties' rights and obligations with respect to Developed Materials from the standard set forth in the current Marketing Agreement. Before we rework that issue, I think it would be productive to discuss each party's respective expectations and desires. The transition services issue also needs to be addressed. However, I would again point out that both of these issues - Developed Materials and transition services - are separate and distinct from the MSA you asked us to consider.

I think the first order of business is finalizing the carrier agreement which needs to be in place by September 1. I thought the changes I sent were straightforward and I would be happy to talk through any issues that are causing concern.

Based on the above, let me know if a conference call makes sense. Lisa and I can be available any time this week or next.

Regards,

Joe

---

**From:** Julie E Campling [mailto:julie.e.campling@aexp.com]
**Sent:** Friday, August 04, 2006 6:24 PM
**To:** Joseph Mott
**Cc:** Aditi J Gokhale; Andrew E Roth; David I Arnon; Lisa D'souza; Mark L LoSacco
**Subject:** RE: New Master Services Agreement, Schedule and Carrier Agreement

Hi Joe,

Thanks for confirming your conversation with Andy, and sending over your comments on the carrier agreement. We are in the process of reviewing those and will get back to you in due course.

With respect to the MSA, I believe we were very clear in our discussions both during our visit to Washington, and on the various telephone conversations subsequent to that meeting, that a new agreement would be put in place to replace the existing agreement, indeed it is specifically mentioned in the letter agreement we signed.

However, based on your responses below, it seems clear that HealthExtras is unwilling to work with American Express on a new agreement and unlikely that a new agreement will be effective in clarifying some of the areas where our two organizations differ in interpretation of key clauses.

Therefore, in order to move things forward expeditiously, we will agree to dispense with the new MSA and Schedule, and


work instead on a supplemental letter agreement, to close out those items which still require clarification, specifically with respect to the Developed Materials.

Would you like American Express take first draft of said letter, or would you prefer to do so? Please let me know your preference.

I look forward to hearing from you regarding the supplemental letter agreement.

Best regards,
Julie
[IMAGE]

"Joseph Mott" <jmott@catalystrx.com>

07/21/06 01:40 PM

To: Julie E Campling/JAPA/TRS/AEXP@AMEX
cc: David I Arnon/AMER/TRS/AEXP@AMEX, Andrew E Roth/AMER/CORP/AEXP@AMEX, Mark L LoSacco/AMER/TRS/AEXP@AMEX, Aditi J Gokhale/AMER/TRS/AEXP@AMEX, "Lisa D'souza" <ldsouza@catalystrx.com>
Subject: RE: New Master Services Agreement, Schedule and Carrier Agreement

Hi Julie,

I spoke with Andy Roth earlier and explained that we reworked the carrier agreement from the earlier versions because when it was originally written it was structured such that HealthExtras would control the carrier relationship. I have to do the final review and expect to send the redline to you on Monday.

As for the MSA and schedule - I cannot identify the need for this document and it does not comport with the business terms that we agreed to operate under until December 31, 2007. That relationship is governed by the original Marketing Agreement of 1999 and the Letter Agreement that we executed on June 23, 2006. The new MSA and schedule would need substantial revision in order to have it "recreate" the terms from the other 2 agreements that control our current relationship, and adding a third agreement would only add further confusion to the equation. More to the point, why do we need to go through the exercise of negotiating the new MSA when Amex has clearly told us that it intends to terminate the relationship on December 31, 2007. I'm not certain why you and the other Amex team members are concerned. I was under the impression that everything was operating smoothly since the time we executed the Letter Agreement.

If I'm mistaken, and you are looking to enter into a long-term relationship beginning on January 1, 2008, then the MSA and schedule would make sense. And, I would certainly work diligently with you to finalize such an agreement. I would be happy to have you tell me you want a new agreement to take effect after the current one expires.

Regardless, if there are concerns we always seem to make more progress in resolving the issues when we make a phone call. Please feel free to pick up the phone and give me a call if I don't respond to an email. I get a lot of them, and they tend to roll off the view screen if I can't get to them right away.

Regards,

Joe

---

From: Julie E Campling [mailto:julie.e.campling@aexp.com]
Sent: Friday, July 21, 2006 9:26 AM

To: Joseph Mott
Cc: David I Amon; Andrew E Roth; Mark L LoSacco; Aditi J Gokhale
Subject: New Master Services Agreement, Schedule and Carrier Agreement

Hi Joe,

I have not yet heard from you with regard to the new MSA, Schedule and the Carrier Agreement.

My original email, with the documents for your review, was sent three weeks ago on June 30th. When I followed up with you on July 6th you advised that you would be meeting with your team early in the week of July 10th and would be providing me with your comments on all three documents by July 14th.

As we did not receive any communication from you as of that date, I followed up July 17th and have yet to see a response from you.

Joe, it is unacceptable that we have had no response from you at all since July 6th, and that your comments have not been as yet forthcoming. I am very concerned about the lack of response from HealthExtras, and I know my concern is shared by the rest of the team here at American Express.

Please provide your comments to me as soon as possible, so we can move ahead. I expect to hear from you shortly.

Best regards,
Julie
[IMAGE][IMAGE]

---

Julie Campling, Director, Customer Experience & Transformation Management
Global Procurement
200 Vesey Street, New York NY 10285 | Tel: 212-640-2202 | Fax: 212-640-3181 | julie.e.campling@aexp.com
GP - Creating Value through Relationships, Innovation, Compliance & Profitability

---

Julie Campling, Director, Customer Experience & Transformation Management
Global Procurement
200 Vesey Street, New York NY 10285 | Tel: 212-640-2202 | Fax: 212-640-3181 | julie.e.campling@aexp.com
GP - Creating Value through Relationships, Innovation, Compliance & Profitability